UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE APPLICATION FOR TEMPORARY RESTRAINING ORDER (DKT. 3)**

## I.  Introduction

On February 27, 2026, Linfeng Zou ("Petitioner") filed a petition for writ of habeas corpus ("Petition" (Dkt. 1)) and an Application for Temporary Restraining Order ("Application" (Dkt. 3)). Through the Petition, he seeks, among other relief, release from immigration detention, or in the alternative, an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days. Dkt. 1 at 9. Through the Application, Petitioner seeks an order that provides the following relief: (1) Petitioner be released from custody, or in the alternative, be provided with a bond hearing before an Immigration Judge within seven days; (2) Respondents return Petitioner's personal belongings that were taken upon his detention; (3) upon any release of Petitioner, Respondents not impose conditions of supervision more restrictive than those previously in place; (4) Respondents shall not transfer, re-arrest, or re-detain Petitioner absent lawful process, including a hearing; and (5) should Respondents elect to proceed with such a hearing, they provide Petitioner with reasonable advance notice of its time and place. Dkt. 3 at 1–2.

On February 27, 2026, an order issued, which set a briefing schedule for the Motion. Dkt. 5. Respondents timely filed their opposition to the Application on March 2, 2026. Dkt. 10 ("Opposition"). Petitioner timely filed a reply in support of the Application on March 3, 2026. Dkt. 11 ("Reply"). Based on a review of the briefing, it has been determined that this matter can be decided without oral argument and is taken under submission pursuant to Local Rule 7-15.

For the reasons stated in this Order, the Motion is **GRANTED IN PART**.

## II.  Factual Background

Petitioner is a citizen of China. Dkt. 3 at 6. According to a U.S. Department of Homeland Security Form I-862, Notice to Appear ("Form I-862"), filed by Petitioner, Petitioner arrived in the United States at or near Tecate, California, on or about December 17, 2023. Dkt. 3 at 21. On or about December 18, 2023, it was determined that Petitioner was inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) because he is "present in the United States without being admitted or paroled, or [had] arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* Petitioner was released from custody on or about December 20, 2023, subject to the requirement that he report periodically to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

Immigration and Customs Enforcement ("ICE") Field Office. Dkt. 3 at 7. Petitioner was ordered to appear at a hearing in connection with section 1229 removal proceedings on March 5, 2025. Dkt. 3 at 21. Petitioner allegedly complied with all reporting requirements for more than two years. Dkt. 3 at 7; Dkt. 1 ¶ 20.

Petitioner filed an Application for Asylum and for Withholding of Removal, Form I-589 ("Form I-589") on or about April 9, 2024. Dkt. 3 at 33; Dkt. 1 ¶ 19. According to the record filed by Respondents, Petitioner was subsequently arrested in Edmund, Oklahoma, on April 15, 2024, for "larceny of merchandise from retailer." Dkt. 10-1 at 4. On January 8, 2025, Petitioner pleaded guilty to one misdemeanor count of larceny of merchandise from retailer and one misdemeanor count of possession or use of lost credit card. *Id.* at 4–5.

On January 8, 2026, when Petitioner reported to an ICE Field Office as required, he was re-detained. Dkt. 3 at 6, 17. Petitioner was allegedly not informed in advance that he would be re-detained or that his release would be revoked. *Id.* at 7. He is currently being held at the detention facility in Adelanto, California. Dkt. 1 ¶ 1.

Petitioner's removal proceedings are pending, but he has no upcoming hearing scheduled. EOIR Automated Case Information, available at https://acis.eoir.justice.gov/en/. Petitioner has not been provided with a bond hearing. Dkt. 3 at 6.

### III.     Analysis

#### A.     Legal Standards

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Fed. R. Civ. P. 65(b) sets forth the standards for the issuance of a TRO. They are fundamentally the same as those that apply to a request for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The moving party has the burden of persuasion. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006).

To obtain either a TRO or a preliminary injunction, the moving party must show the following: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of immediate or prompt relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Where the non-moving party is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

The Ninth Circuit applies a "sliding scale" approach to the requirements necessary for interim injunctive relief. Accordingly, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimental v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

Likelihood of success on the merits is "the most important factor" in determining whether interim, injunctive relief is warranted. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 990 (9th Cir. 2020). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

Alternatively, where a plaintiff establishes "serious questions going to the merits," and demonstrates "a balance of the hardships that tips sharply towards the plaintiff," a TRO or preliminary injunction may be warranted "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell* ("*Cottrell*"), 632 F.3d 1127, 1135 (9th Cir. 2011). *Cottrell* determined that this "serious questions" test, which requires a lesser showing as to success on the merits than the "likelihood of success" test, continues to apply following *Winter* when two conditions are met. *First*, the balancing of the equities must tip "sharply" in favor of movant. *Id. Second*, the other *Winter* factors—irreparable harm and the public interest—must be established. See *Farris v. Seabrook*, 677 F.3d 858, 864-65 (9th Cir. 2012).

  B. Application

Petitioner contends that "his ongoing detention violates the Fifth Amendment's Due Process Clause." Dkt. 3 at 8. He seeks a TRO that would require Respondents to release him pending the completion of the immigration proceedings, or in the alternative, to require that he be provided with an individual bond hearing before an immigration judge, with instructions that Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is lawfully detained and not entitled to bond. *Id.* at 6; Dkt. 11 at 3.

    1. <u>Likelihood of Success on the Merits</u>

      a) *Maldonado Bautista* Class

Respondents concede that Petitioner appears to be a member of the class ("Class Member") certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). Dkt. 6 at 2. Class Members encompass noncitizens who are in the United States without lawful status who: (1) entered the United States without inspection; (2) were not apprehended upon arrival; and (3) were not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the Department of Homeland Security made an initial custody determination. *Maldonado Bautista*, 2025 WL 3713987, at *32.

As noted, Petitioner's Form I-862 states that he was apprehended upon his arrival and was deemed inadmissible by an immigration officer. Dkt. 3 at 21. Therefore, Petitioner does not appear to satisfy the second requirement for Class Membership. Accordingly, based on the current record, Petitioner has not shown that he is entitled to relief as a Class Member. However, other issues must be addressed with respect to other bases for Petitioner's request for relief.

      b) Basis for Detention

Only "[f]our statutes grant the Government authority to detain noncitizens who have been placed in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (footnote omitted). "A noncitizen's place 'within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.'" *Id.* (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (section 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provisions").

In the Opposition, Respondents argue that Petitioner is subject to mandatory detention, *i.e.*, detention without statutory entitlement to a bond hearing, pursuant to 8 U.S.C. § 1226(c). Dkt. 10 at 2–3. Under 8 U.S.C. § 1226(c)(1)(A), a noncitizen may be detained if inadmissible under section 1182(a)(2). A noncitizen is inadmissible under section 1182(a)(2) if he committed "a crime involving moral turpitude," unless "the maximum penalty possible for the crime . . . did not exceed imprisonment for one year and, . . . the [noncitizen] was not sentenced to a term of imprisonment in excess of 6 months . . . ." 8 U.S.C. § 1182(a)(2)(A). Petitioner pleaded guilty to misdemeanor larceny for which the maximum sentence does not exceed imprisonment for one year, and his sentence did not include imprisonment. Dkt. 10-1 at 4–5; Okla. Stat. tit. 21, § 21-1731v1. Accordingly, because Petitioner is not inadmissible under section 1182(a)(2), he is not subject to mandatory detention under section 1226(c)(1)(A).

Under 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), a noncitizen who is "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title" and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury" is subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(E). Petitioner's Form I-862 states that Petitioner was deemed inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), which satisfies the first requirement of § 1226(c)(1)(E). *See* Dkt. 3 at 21. Respondents argue that Petitioner's January 8, 2025, conviction of Larceny of Merchandise from a Retailer and Possession or Use Lost Credit Card satisfy the second requirement. Dkt. 10 at 2. However, the Laken Riley Act ("LRA") was enacted on January 29, 2025. Pub. L. No. 119-1, 139 Stat. 3 (2025). Accordingly, the Laken Riley Act would need to apply retroactively to Petitioner's conviction. *See* Dkt. 10-1 at 4.

The LRA itself is silent as to its retroactivity. *See* 8 U.S.C. § 1226(c), as amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Accordingly, there is a presumption that it does not apply retroactively. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 316 (2001) ("A statute may not be applied retroactively . . . absent a clear indication from Congress that it intended such a result."). Alternatively, Petitioner also advances two arguments as to why it does not apply to him.

*First*, Petitioner contends that Respondent's arguments that he is subject to mandatory detention under section 1226(c) and that he is a Class Member are inconsistent. Dkt. 11 at 1–2; *see also* Dkt. 10 at 2–3. One of the Class Membership requirements is that a noncitizen was not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the Department of Homeland Security made an initial custody determination. *Maldonado Bautista*, 2025 WL 3713987, at *32. Accordingly, "if Respondents agree that Petitioner is in the [Bond Eligible Class], they must also agree that the LRA does not apply to him or to his [January 8, 2025,] conviction." *See Araiza v. Hermosillo*, No. 25-CV-2139, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

*Second*, Petitioner argues that the Laken Riley Act does not apply to him because ICE did not detain him upon his release from criminal custody. Dkt. 11 at 3. The LRA states that "[t]he Attorney General shall take into custody any [noncitizen] who" meets the statutory requirements, "when [he] is released . . . ." 8 U.S.C. § 1226(c)(1)(E). It continues, "[I]f the [noncitizen described in paragraph (1)(E)] is not otherwise detained by Federal, State, or local officials, [the Secretary of Homeland Security] shall effectively and expeditiously take custody of [him]." *Id.* § 1226(c)(3). Accordingly, if an individual was not in Federal, State, or local custody when the LRA was enacted such that immigration officials could "effectively and expeditiously take custody of [him]" upon release, application of the LRA to that individual would violate the terms of the statute. The present evidence shows that Petitioner's sentence in connection with his January 8, 2025, guilty plea was "fine and court costs" rather than detention. Accordingly, the present record does not support that he was in criminal custody when the LRA was enacted. Therefore, Respondents' contention that Petitioner is not entitled to a bond hearing because he is detained pursuant to section 1226(c) is unpersuasive based on the current record.

Respondents do not offer alternative statutory authority for Petitioner's continued mandatory detention. *See* Dkt. 10. The remaining two potential bases for detention—8 U.S.C. §§ 1225(b) and 1231(a)—do not apply to the facts as presented in this matter at this time. 8 U.S.C. § 1225(b) does not apply when a noncitizen has been "released following their initial encounter with immigration authorities and have resided in the United States for a significant period, like Petitioner here." *Bekler v. Noem*, No. 25-CV-1974, 2026 WL 234949, at *9 (E.D. Cal. Jan. 29, 2026). At the time of Petitioner's January 8, 2026, detention, he "was not an arriving noncitizen seeking entry into the country and had been living here for [over] one year. Accordingly, []he was not seeking admission at the time of [his] detention, so Section 1225(b)(2)'s mandatory detention provision does not apply." *Daza v. Albarran*, No. 25-CV-10214, 2026 WL 81518, at *4 (N.D. Cal. Jan. 12, 2026). Because Petitioner was released following his arrest and placed in ordinary deportation proceedings under 8 U.S.C. § 1229, "the government cannot switch tracks" and subject Petitioner to mandatory detention under section 1225(b) after it had previously placed Petitioner "in removal proceedings under section 1229a and released [him] on [his] own recognizance under section 1226(a)." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 936 (N.D. Cal. 2025). Further, section 1231(a) only applies to detention following the issuance of an order of removal, which has not occurred as to Petitioner. 8 U.S.C. § 1231(a).

In light of the foregoing, Petitioner has shown a likelihood of demonstrating that the only lawful basis for his continued detention at this time is section 1226(a). Under that provision of the Immigration and Nationality Act, Petitioner is entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018); *see also Rodriguez Diaz v. Garland*, 53 F.4th at 1202. Respondents appear to concede that, if section 1226(c) does not apply, Petitioner is detained under section 1226(a). Dkt. 10 at 3 ("Petitioner appears to be a member of the Bond Eligible Class . . . ."). For those reasons, Petitioner is likely to succeed on the merits of his claim that he is entitled to a bond hearing under section 1226(a).

For the foregoing reasons, based on the present record, Petitioner has shown that he is likely to succeed on the merits of his claim that he is entitled to a bond hearing under section 1226(a).

        c)      Due Process

Petitioner argues that his continued detention violates the Fifth Amendment's Due Process Clause. Dkt. 3 at 8. Petitioner asserts that "a pre-deprivation hearing was required to satisfy due process," so his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

immediate release, rather than a bond hearing, is warranted. *Id.* at 12–13. Respondents' sole response to this argument is that "to the extent Petitioner would be entitled to any remedy via the TRO Application, at most it would be ordering a bond hearing . . . ." Dkt. 10 at 3.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Under *Matthews*, courts assess three factors in evaluating due process claims:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

*First*, as explained in greater detail in connection with irreparable harm, Petitioner's individual liberty interest in freedom from detention "lies at the heart of the liberty that [the Due Process Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Although the "initial decision to . . . release [Petitioner] [was] discretionary, the government's subsequent release of [Petitioner] from custody creates 'an implicit' promise that [his] liberty will be revoked only if [he] fail[s] to abide by the conditions of [his] release." *Calderon v. Kaiser*, No. 25-CV-6695, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 40 U.S. 471, 482 (1972)).

Although Petitioner has a criminal conviction (*see* Dkt. 10-1 at 4–5), there is no evidence that he "has [not] already completed his criminal sentence, and at issue now is a civil detention. Given the civil context, his liberty interest is arguably greater than the interest of [criminal] parolees" who are entitled to a pre-deprivation hearing. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. 2019) (citing *Morrissey*, 408 U.S. 471). Further, even in the civil context of involuntary civil commitment, which serves a "regulatory, rather than punitive purpose," the Ninth Circuit has determined that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection . . . ." *United States v. Sahhar*, 917 F.2d 1197, 1205–06 (9th Cir. 1990) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). Petitioner therefore has a significant liberty interest in freedom from detention. *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1032–33 (N.D. Cal. 2025) ("If a parolee serving out a sentence for a violent crime, and subject to highly restrictive conditions of release, has a sufficiently strong liberty interests to be entitled to a hearing prior to re-incarceration, then a non-citizen freed from civil detention on bond likely has a similar entitlement.").

Petitioner's presence in the United States for more than two years adds force to his individual interests. *See* Dkt. 3 at 7. Although Petitioner does not appear to have immediate family members living in the United States (*see id.* at 26, 28), he contends that during that time, "he built a stable life in the United

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

States, working to support himself, paying taxes, and living openly in the community." Dkt. 1 ¶ 20.

*Second*, there is a significant risk that Petitioner has been deprived of this liberty interest due to error. As explained previously, Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A), which has not been shown to apply, or 8 U.S.C. § 1226(c)(1)(E) (*see* Dkt. 10 at 2–3), which is premised on a likely erroneous retroactive application of the LRA to Petitioner's January 8, 2025, conviction. Further, Petitioner's release in December 2023 implies that immigration officials at that time determined that he did not pose a danger to the community and was not a flight risk. Petitioner's current detention without notice or opportunity to be heard in light of the prior determination by Respondents that he "would not pose a danger to property or persons" poses a significant risk of an erroneous deprivation of Petitioner's liberty interest. 8 C.F.R. § 1236.1(c)(8); s*ee also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("[G]iven that Petitioner was previously found not to be a danger or risk of flight . . . the risk of erroneous deprivation remains high.").

Additional procedural safeguards would likely reduce the possibility of such an erroneous deprivation of Petitioner's liberty. Petitioner alleges that he complied with his reporting requirements for more than two years and was never informed that his release had been revoked or that he had violated any conditions of his release. Dkt. 3 at 7. Accordingly, it is reasonable to infer that, if Petitioner were provided notice and the opportunity for a hearing before re-detention, Petitioner and Respondents could present the evidence necessary for an immigration judge to determine if Petitioner now poses a risk to the community or flight risk pending the completion of the removal proceedings.

*Third*, Respondents' interest in protecting the public from individuals who may pose a danger or flight risk is not outweighed by Petitioner's liberty interests. The government has an "obvious interest" in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing . . . ultimate removal." *Rodriguez Diaz*, 53 F.4th at 1208. On January 8, 2025, Petitioner pleaded guilty to one misdemeanor count of larceny of merchandise from retailer and one misdemeanor count of possession or use of lost credit card. Dkt. 10-1 at 4–5. For approximately another year before his re-detention though, Petitioner appears to have complied with his reporting requirements, and he has a pending asylum application. Dkt. 3 at 6, 17 ¶¶ 6–8, 25–34. It also appears Petitioner's sentence included fines and court costs rather than incarceration. *Id.* Thus, Petitioner's criminal sentence does not suggest or imply that he posed any significant threat to the community sufficient to warrant criminal incarceration. Accordingly, the government has not demonstrated that Petitioner's pre-detention reporting requirements were insufficient to ensure its interest in enforcing immigration laws.

Further, although providing Petitioner with a pre-deprivation hearing may impose administrative and burdens on Respondents, such burdens are substantially outweighed by Petitioner's liberty interests. *See Ortega v. Bonnar*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). These burdens are also likely to be less significant because Petitioner is already subject to removal proceedings before an immigration judge and was regularly reporting to ICE. *See* Dkt. 3 at 7. Further, as the preceding analysis establishes, Petitioner is entitled to a bond hearing under section 1226(a), so the additional burden imposed on Respondents to conduct a hearing before any re-detention of Petitioner is not sufficiently great to outweigh Petitioner's liberty interests. Therefore, the third *Matthews* factor weighs in favor of granting the relief sought by Petitioner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

Based on this analysis, it is determined that Petitioner is likely to succeed on the merits of his due process claim.

\* \* \*

For the foregoing reasons, this factor supports granting certain of the requested injunctive relief.

    2.    <u>Irreparable Harm</u>

As noted, it is well established that unlawful detention constitutes irreparable harm. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The Ninth Circuit has also identified "irreparable harms imposed on anyone subject to immigration detention," including less access to medical and psychiatric care in detention facilities, economic burdens on detainees and their families, harms to children whose parents are detained, and mental health problems resulting from detention. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Petitioner argues that his detention has resulted in his inability "to earn income ore manage his personal and financial affairs, causing ongoing economic and familial harm that cannot be remedied after the fact." Dkt. 3 at 12. These are comparable to the harms that *Hernandez* recognized as "irreparable." 872 F.3d at 995.

Based on the foregoing, this factor supports granting certain of the requested injunctive relief.

    3.    <u>Balance of Equities and the Public Interest</u>

The balance of equities and public interest factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "It is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (quoting *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011)). Further, although Petitioner faces substantial risks of the infringement on his liberty interests, Respondents are likely to incur administrative costs by providing him with an opportunity to have a bond hearing. "Faced with such a conflict between financial concerns and preventable human suffering, [there is] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

Based on the foregoing, this factor supports granting certain of the requested injunctive relief.

\* \* \*

Because a review of the *Winter* factors supports granting certain of the requested relief, it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

unnecessary to conduct an analysis under *Cottrell.*

        4.        <u>Remedy</u>

Respondents contend that, if a bond hearing is ordered under § 1226(a), "Petitioner has the burden of proof to show [he is] not a danger or flight risk." Dkt. 10 at 4.

Respondents' position is unpersuasive. Courts have recognized that procedural due process principles may require the government to bear the burden to prove by clear and convincing evidence that a noncitizen "is a flight risk or a danger to the community to justify denial of bond" in certain contexts. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained for prolonged period under § 1226(c)); *Black v. Decker*, 103 F.4th 133, 159 (2d Cir. 2024) (affirming district court's order "requir[ing] the government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (in order to justify a noncitizen's prolonged detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"). Although the issue in *Singh* arose in the context of provisions of the Immigration and Nationality Act that are not at issue in this action, its reasoning is persuasive in the context of a section 1226(a) re-detention hearing. *See, e.g., Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1061 (N.D. Cal. 2020) (applying *Singh* to a § 1226(a) bond hearing); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (noting a "consensus view" among district courts that detention pending removal under § 1226(a) requires government to bear the burden of proof that detention is justified).

*Rodriguez Diaz* does not warrant a different outcome. There, a habeas petitioner who had been detained for a prolonged period pursuant to section 1226(a), sought a second bond hearing before an immigration judge at which the government would bear the burden of proof by clear and convincing evidence. *Rodriguez Diaz*, 53 F.4th at 1203. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons . . . ." *Id.* at 1193–94. The Ninth Circuit observed that section 1226(a) offered the petitioner "extensive procedural protections" in respects other than burden-shifting, "including several layers of review of the agency's initial custody determination, . . . the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202–03. *Rodriguez Diaz* also recognized that, even where such statutory protections are available, greater protections may be constitutionally necessary in individual cases where the risk of an erroneous deprivation of liberty is particularly high. *See id.* at 1211–12. As another district court concluded, *Rodriguez Diaz* "held only that a noncitizen detained under section 1226(a) does not have a right to a *second* bond hearing when the only changed material condition since their first bond hearing is the duration of their detention." *Pinchi*, 792 F. Supp. 3d at 1034.

The circumstances presented in this action are distinguishable from those in *Rodriguez Diaz*. Thus, Petitioner has been denied the procedural protections provided by section 1226(a) based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00951-JAK (PDx) | Date | March 6, 2026 |
| Title | Linfeng Zou v. Warden of Desert View Annex Detention Facility, et al. | | |

Respondents' unsupported assertion that he is subject to section 1226(c) mandatory detention. Moreover, Petitioner was previously released from custody "after [his] initial apprehension [which] reflected a determination by the government that []he was neither a flight risk nor a danger to the community . . . ." *Id.* (citing 8 C.F.R. § 1236.1(c)(8)). Because Respondents have now initiated a new detention process, it is appropriate that they should be required to bear the burden of providing justification for the re-detention. *Accord Garcia v. Chesnut*, No. 25-CV-1907, 2025 WL 3771348, at *11–12 (E.D. Cal. Dec. 31, 2025) (distinguishing *Rodriguez Diaz* and shifting the burden to the Government in a section 1226(a) bond hearing); *M.R.R. v. Chestnut*, No. 25-CV-1517, 2025 WL 3265446, at *13–14 (E.D. Cal. Nov. 24, 2025) (same).

It is noteworthy that the circumstances here may later be found to have changed materially from when Petitioner was released upon his arrival in December 2023. As noted, he pleaded guilty on January 8, 2025, as to the aforementioned criminal conduct. See Dkt. 10-1 at 5. However, that is not a basis to shift the burden of proof from the Government to Petitioner as to whether, based on the totality of the evidence that may be presented at the pre-deprivation hearing, it has shown by clear and convincing evidence that Petitioner now presents a danger to the community or a flight risk unless re-detained. That outcome is consistent with *Singh*.

**IV.   Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED IN PART**. Respondents shall release Petitioner forthwith upon the entry of this Order on the docket. Petitioner shall not be re-detained unless Respondents demonstrate at a pre-deprivation hearing, by clear and convincing evidence, that he is a flight risk or danger to the community and that no conditions other than his detention would be sufficient to prevent such harm. Further, upon Petitioner's release, Respondents shall not impose conditions of supervision more restrictive than those previously in place and shall return Petitioner's personal belongings that were confiscated upon his detention. Within eight days of the issuance of this Order, Respondents shall file a status report as to whether Petitioner has been released, and his property returned.

Finally, Respondents are ordered to show cause why a preliminary injunction should not be issued with respect to the relief that has been requested by Petitioner. *See* C.D. Cal. L. R. 65-1. Respondents shall file any written response to the Order to Show Cause ("OSC") no later than April 3, 2026. Petitioner shall file any reply no later than April 7, 2026. If either or both parties elect to rely on the current briefing with respect to the OSC, they shall file a corresponding notice on or before the due date of their respective briefs. Based on a review of the briefing on the OSC, a determination will be made whether a hearing on a preliminary injunction will be scheduled, or if the matter will be taken under submission pursuant to Local Rule 7-15.

**IT IS SO ORDERED.**

| | : | |
|---|---|---|
| Initials of Preparer | LC2 | |